UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | CASE NO. 4:20-CR-125 |
| SUMMER HEATHER WORDEN | § | |

# BILL OF PARTICULARS

The United States of America, appearing by and through its undersigned attorneys, respectfully submits this bill of particulars in the above captioned case. As detailed by the Court, the defendant has been charged with two counts of making a false statement, in violation of 18 U.S.C. § 1001(a)(2), and materiality is an essential element of these charges. (*Order* at 4, June 10, 2022, ECF No. 53) (internal citations omitted). In its June 10 Order, the Court required the government to file a bill of particulars "identifying Person A and stating the Government's theory of materiality as to both counts." *Id.* In compliance with the Court's Order, the government states as follows:

### I. Person A

Person A is Lieutenant Colonel Anne C. McClain, United States Army. This information was previously provided to defense counsel in the government's pretrial discovery, and by electronic mail to defense counsel on April 28, 2022.

### II. Materiality

In the context of federal criminal law, a material statement must have "'a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (quoting *Kungys v. United States,* 485 U.S. 759, 770 (1988)) (alteration in original). "Actual influence or reliance by a government agency is not required," the Fifth Circuit has explained: "[t]he statement may still be material 'even if it is ignored or never read by the agency receiving the misstatement.'" *United States v. Puente*, 982 F.2d 156, 159 (5th Cir. 1993) (quoting *United States v. Diaz,* 690 F.2d 1352, 1358 (11th Cir.1982)). The standard "is not whether the false statement actually influenced a government decision or even whether it probably influenced the decision; the standard is whether the misrepresentation was *capable* of influencing the agency decision." *Id.* (emphasis in original).

In this case, defendant SUMMER H. WORDEN has been charged with a making false statements in two separate venues. Count One alleges false statements made on an online form the defendant submitted on March 19, 2019. (*Indictment* at 2, Feb. 27, 2020, ECF No. 1). The defendant submitted this form to IdentityTheft.gov, which is a website operated by the Federal Trade Commission (FTC) as part of its Consumer Sentinel Network, a cyber tool that provides resources and assistance to identity theft victims, their attorneys, and law enforcement members. Count Two alleges the defendant lied to agents of the National Aeronautics and Space Administration's Office of the Inspector General (NASA OIG) during a telephone interview conducted on July 22, 2019. *Indictment* at 3.

The materiality of the false statements made to NASA OIG agents is straightforward. In approximately July 2019, NASA OIG had opened an inquiry into allegations of identity theft and other misconduct lodged against Person A, who was a serving member of NASA's astronaut program. The defendant's statements regarding these allegations were material, and more: they were certainly capable of influencing NASA OIG's consideration of these allegations, because the defendant was the individual ultimately responsible for the allegations. Moreover, the government expects that the facts will show these statements actually did influence NASA OIG consideration of the allegations.

If this case proceeds to trial, the government expects that the evidence will show NASA OIG relied heavily on witness statements through its investigation, and these statements, including the defendant's, were critical in determining whether or not facts supported the allegations lodged against Person A. The defendant's allegations were serious, and involved misconduct that could be viewed as criminal, and investigating such allegations lies at the heart of NASA OIG's mission.[1]

Similarly, the false statement alleged in Count One was capable of influencing both the Federal Trade Commission (FTC) and NASA OIG. As noted above, the FTC operates the IdentityTheft.gov website, which the defendant used to submit her alleged false statement. This website, and the FTC's efforts to store and refer complaints, are part of the agency's Congressionally-mandated and agency-wide mission to combat identity theft. *See* Identity Theft and Assumption Deterrence Act. Pub. L. 105-318, 11 Stat. 3007 (Oct. 30, 1998) (requiring the FTC to establish a database, provide materials to complainants, and refer complaints to both law enforcement and national consumer reporting agencies).

---

[1] NASA OIG's website explains its overall mission as follows: "In accordance with the Inspector General Act, we conduct objective oversight of NASA programs and operations and independently report to the Administrator, Congress, and the public to further the Agency's accomplishment of its mission." More specifically, its Office of Investigations "investigates allegations of crime, cyber-crime, fraud, abuse or misconduct having an impact on NASA programs, personnel and resources." *See* "About Us," https://oig.nasa.gov/mission.html (accessed June 24, 2022).

The FTC assists victims by providing a personal recovery plan, including pre-filed letters and forms; it assists attorneys, who counsel identity theft victims; and it assists law enforcement, including the investigation and prosecution of identity theft. In particular, IdentityTheft.gov serves as a clearinghouse for identity theft reports, as part of the FTC's Consumer Sentinel report database. The FTC houses complaints, such as the defendant's, and then shares that information through its Consumer Sentinel database with law enforcement agencies, who can aggregate complaints or focus on specific allegations as necessary.

If further evidence of the significance the FTC attaches to statements made on IdentityTheft.gov is needed, the Court (and ultimately, the jury) can look to the form and the website itself. In order to submit an identity theft form, a user must acknowledge a false statements warning. Below the fields where the user inputs the specifics of the complaint, the relevant webpage contains a box that must be checked. By doing so, the user affirms that the complainant understands "knowingly making false statement to the government may violate federal . . criminal statutes, and may result in a fine, imprisonment, or both."

The page also contains a perjury affirmation. The complainant must sign, under a statement that reads, "Under penalty of perjury, I declare this information is true and correct to the best of my knowledge." The FTC advises individuals that they can use the form to "prove to business and credit bureaus that you have submitted an

The FTC assists victims by providing a personal recovery plan, including pre-filed letters and forms; it assists attorneys, who counsel identity theft victims; and it assists law enforcement, including the investigation and prosecution of identity theft. In particular, IdentityTheft.gov serves as a clearinghouse for identity theft reports, as part of the FTC's Consumer Sentinel report database. The FTC houses complaints, such as the defendant's, and then shares that information through its Consumer Sentinel database with law enforcement agencies, who can aggregate complaints or focus on specific allegations as necessary.

If further evidence of the significance the FTC attaches to statements made on IdentityTheft.gov is needed, the Court (and ultimately, the jury) can look to the form and the website itself. In order to submit an identity theft form, a user must acknowledge a false statements warning. Below the fields where the user inputs the specifics of the complaint, the relevant webpage contains a box that must be checked. By doing so, the user affirms that the complainant understands "knowingly making false statement to the government may violate federal . . criminal statutes, and may result in a fine, imprisonment, or both."

The page also contains a perjury affirmation. The complainant must sign, under a statement that reads, "Under penalty of perjury, I declare this information is true and correct to the best of my knowledge." The FTC advises individuals that they can use the form to "prove to business and credit bureaus that you have submitted an

FTC Identity Theft Report to law enforcement." All of these statements signify the materiality, or potential impact, of false statements made on the form. Put simply, abuse of the form, and certainly intentionally false statements, have the ability to undermine the agency's information-sharing mission.

The Fifth Circuit has upheld the materiality of false statements made in online databases such as the one alleged in the indictment. *See United States v. Smith*, 519 Fed App'x 853, *858 (5th Cir. 2013) (affirming conviction when defendant made false entries in a driver's license database operated by the Department of Transportation that contravened the database's information-sharing program). It has also upheld false statements, such as the one alleged in the indictment, where the materiality comes from a showing that the "functioning of the agency involved would have been impaired had the agency relied on the defendant's statement," and that the "potential for subversion of an agency's function can be readily inferred." *United States v. Abrahem*, 678 F.3d 370, 376 (5th Cir. 2012) (internal citations and quotations omitted).

Finally, in addition to the potential impact on the FTC and its mission, NASA OIG was also capable of being influenced by the defendant's statements to the FTC. In fact, the defendant referenced her identity theft complaint to the FTC in her interactions with NASA OIG, as proof of the truth of her allegations. This further demonstrates the materiality of the allegations in Count Two.

## III. Conclusion

The United States respectfully submits this bill of particulars, in response to the Court's Order.

Respectfully submitted,

JENNIFER B. LOWERY
UNITED STATES ATTORNEY

\_\_\_/s/_____
RALPH IMPERATO
ARTHUR JONES
JOHN P. PEARSON
Assistant United States Attorneys
U.S. Attorney's Office, S.D. Texas
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: 713-567-9000

# **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this notice of appearance was filed and served electronically via the ECF system on counsel for the defendant on June 24, 2022.

*/s/ John P. Pearson*
John P. Pearson
Assistant United States Attorney